UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MULTISTAR INDUSTRIES, a Washington Corporation, | NO. 2:19-CV-0182-TOR |
| Plaintiff, | ORDER DENYING MOTION TO REMAND; DENYING MOTION TO CONTINUE; GRANTING MOTIONS TO DISMISS |
| v. | |
| GETTEL OCALA d/b/a BMW of OCALA, BOBBY WATTS, LOVE CHEVROLET, INC., DARRIN TAYLOR, McCURLEY INTEGRITY CADILLAC, *et al.*, | |
| Defendants. | |

BEFORE THE COURT are Defendants Love Chevrolet and Darrin Taylor's Motion to Dismiss (ECF No. 8) and Motion to Continue Hearing on Plaintiff's Motion to Remand (ECF No. 17); Defendants Gettel Ocala and Bobby Watts' Motion to Dismiss (ECF No. 25); and Plaintiff Multistar Industries' Motion to Remand (ECF No. 14). The matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully

ORDER DENYING MOTION TO REMAND; DENYING MOTION TO CONTINUE; GRANTING MOTIONS TO DISMISS ~ 1

informed.  For the reasons discussed below, Plaintiff's Motion to Remand (**ECF No. 14**) is **denied**, Defendants Love Chevrolet and Darrin Taylor's Motion to Continue Hearing on Plaintiff's Motion to Remand (**ECF No. 17**) is **denied as moot**, and the Motions to Dismiss (**ECF Nos. 8, 25**) are **granted**.

## BACKGROUND

This case arises out of Plaintiff Multistar Industries' ("Multistar") purchase of a 2016 Cadillac CTS-V from Defendant BMW of Ocala ("Ocala") and the vehicle's breakdown shortly thereafter.[1]

Plaintiff, a Washington corporation acting through its president, Peter Vanourek, observed an internet advertisement for the purchase of the Cadillac from Ocala.  ECF No. 13 at ¶¶ 3, 13-14.  Ocala is incorporated in and operates out of Florida.  ECF No. 13 at ¶ 4.  Ocala advertises locally through print and other sources, but its only national advertising consists of posting its cars to third-party websites such as cars.com, autotrader.com, and cargurus.com.  ECF No. 25 at 3.

---

[1]  The facts are construed in a light most favorable to Plaintiff, as factual disputes are settled in favor of Plaintiff and uncontroverted allegations in the complaint are taken as true; however, bare allegations are not accepted as true where the pleading is contradicted by affidavit.  *See Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citation omitted).

Ocala has no physical presence in the state of Washington and has no employees who work in Washington. ECF No. 25 at 4. Defendant Bobby Watts, general manager of Ocala, is a resident of Florida and has never traveled to or performed job duties in Washington. *Id.*

Plaintiff and Ocala entered into a contract for the purchase and sale of the vehicle – including the remaining balance of the manufacturer's warranty – via "telephone, fax, email and the internet" from their respective locations in Florida and Washington. ECF No. 13 at ¶¶ 14-18. Plaintiff began to drive the vehicle back to Washington, but, within 48 hours, the vehicle malfunctioned in Chattanooga, Tennessee. ECF No. 13 at ¶¶ 20-21. Plaintiff contacted Integrity Cadillac of Chattanooga ("Integrity") to look at the vehicle. ECF No. 13 at ¶ 21. Integrity examined the vehicle and determined that it had "a cracked engine head, head damage and [a] blown head gasket." ECF No. 13 at ¶ 24. According to Plaintiff, Integrity's "position was that the engine damage was a result of several aftermarket modifications that had been added to the engine prior to plaintiff's purchase." ECF No. 13 at ¶ 24. Integrity informed Plaintiff that the "significant aftermarket modifications [] had voided the vehicle's factory warranty on the engine," so the damage was not covered by the warranty. ECF No. 13 at ¶ 25.

Based on Integrity's report, Plaintiff argues Ocala misrepresented the fact that the vehicle came with a factory warranty.[2] ECF No. 13 at ¶ 26.

Ocala and Watts "were informed of the information provided by [Integrity] and the absence of warranty coverage." ECF No. 13 at ¶ 26. According to Plaintiff, Ocala and Watts told Plaintiff "it's not our problem" and "attempted to argue" that Plaintiff "heard the car run" and that this "somehow caused [Plaintiff] to know that the car was not covered under the manufacturer's warranty." ECF No. 13 at ¶ 26. Plaintiff alleges that, "[a]s the vehicle had significant modifications that were undisclosed to plaintiff at the time of sale that voided the manufacturer's warranty, plaintiff demanded rescission of the sales contract and refund of his purchase money" but Ocala and Watts "refused to even respond to plaintiff's

---

[2] In the arbitration proceeding later initiated by Plaintiff, the arbitrator found that "[t]he exclusion of factory warranty coverage for damage occurring after the sale caused by the modifications . . . does not negate the existence of the manufacturer's warranty, including all exclusions and limitations, at the time of purchase." ECF No. 13-4 at 4. In other words, there was a warranty in effect, it just didn't cover the damages caused by the after-market modifications. Just like any insurance policy that contains exclusions to coverage, the insurance is in effect, but it excludes certain damages.

written demand." ECF No. 13 at ¶ 27.  The car then remained at Integrity.  ECF No. 13 at ¶ 29.

After approximately three months, and after Integrity requested Plaintiff retrieve the vehicle (to no avail), Ocala arranged for the vehicle to be brought back to Florida from Tennessee.  ECF No. 13 at ¶¶ 29-30.  Thereafter, Ocala arranged for Love Chevrolet ("Love") in Florida to repair the vehicle.  ECF No. 13 at ¶ 30.  Love is a Florida corporation engaged in the business of selling and repairing motor vehicles in Florida.  ECF No. 8 at 3.  Love does not conduct any business in Washington or advertise in the state.  ECF No. 8 at 3-4.  Defendant Darrin Taylor is employed by Love and was the service advisor for the repair of Plaintiff's vehicle.  ECF No. 10 at ¶¶ 1, 5.

Love performed the repairs and represented that the "vehicle is in full GM specs and return to all factory setting.  All factory warranties are in full affect [sic] with no blocks."  ECF No. 13 at ¶ 30 (brackets in original).  According to Plaintiff, Love made additional "warranty specific representations" on the invoice.  ECF Nos. 13 at ¶ 31; 13-2 (invoice).  In July 2017, Watts informed Plaintiff that the "vehicle had been repaired and was ready for pickup[.]"  ECF No. 13 at ¶ 33.  Plaintiff offered to accept the vehicle if Ocala "would pay plaintiff's losses, including attorney fees and other out of pocket expenses, as well as warranty the vehicle an additional five months after expiration of the factory warranty due to the

vehicle sitting for five months after it broke down in Tennessee." ECF No. 13 at ¶ 34. Ocala and Watts "refused" the demand. ECF No. 13 at ¶ 35.

Plaintiff sought legal recourse and demanded arbitration with Ocala under the terms of the sales agreement. ECF No. 13 at ¶ 36; *see* ECF No. 13-4. On May 1, 2018, the arbitrator found for Ocala and awarded Ocala attorney fees in the amount of $23,393. ECF Nos. 13 at ¶ 40; 13-4 at 2-6. Plaintiff complains that the arbitration award is defective in that the arbitrator (1) relied upon "intentionally false evidence" (the declaration of Watts submitted by Ocala) and (2) reached incorrect conclusions with respect to other factual findings. ECF No. 13 at ¶¶ 37-41. Plaintiff moved to vacate the arbitration award in state court in Florida. ECF No. 11-4 at 2-14. The Florida court denied Plaintiff's motion and affirmed the arbitration award. ECF No. 11-6 at 2. Plaintiff did not appeal this decision. ECF No. 11-6 at 2.

After the arbitration, Plaintiff again picked up the vehicle from Ocala in Florida and set out for Washington. ECF No. 13 at ¶ 42. Other than an issue with the vehicle's climate control, the vehicle operated for roughly four months before the vehicle stopped working, again. ECF No. 13 at ¶¶ 42-44. Plaintiff had the vehicle towed to McCurley Cadillac ("McCurley") in Washington State. ECF No. 13 at ¶ 44. Upon inspection, McCurley determined that the "starter bolts were not 'torqued' correctly when installed by [Love]" and that "[b]ecause of this GM

(Cadillac) will not warranty the engine (it requires a new block to be properly repaired), as it is not a material defect, but a technical error of the installing technician at [Love]." ECF No. 13 at ¶ 45. According to Plaintiff, "McCurley service personnel made contact multiple times with [Love] to inform them of the problem [but Love] insisted that it wasn't 'their problem,' and that the vehicle was indeed covered by warranty." ECF No. 13 at ¶ 46. Based on this, as with Ocala, Plaintiff believes Love misrepresented the warranty status because the warranty did not cover the engine damage. ECF No. 13 at ¶ 47.

On May 9, 2019, Plaintiff brought suit in the Superior Court of Washington in Adams County. ECF No. 1-1. Plaintiff asserted claims against Ocala, Love, and Darren Taylor (an employee and agent of Love) under Washington's Deceptive and Unfair Trade Practices Act, ECF No. 1-1 at ¶¶ 47-55; against Ocala for negligent misrepresentation, ECF No. 1-1 at ¶¶ 56-61; against Ocala under the Washington Uniform Commercial Code, ECF No. 1-1 at ¶¶ 62-69; against Ocala for breach of contract, ECF No. 1-1 at ¶¶ 83-88; and against Ocala, Watts, and Love under Washington's Consumer Protection Act, ECF No. 1-1 at ¶¶ 89-92.

Plaintiff also requested declaratory judgment as to a series of questions that go to (1) the merits of the case and other incidental issues underlying the claims and (2) the legitimacy of the underlying arbitration. ECF No. 13 at ¶¶ 70-82 (requesting declaration as to the status of the warranty at differing times, the nature

of the complained of affidavit and its effect on the arbitration proceeding, the legal effect – e.g., whether rescission is proper, whether Plaintiff was deprived of the benefit of the purchase – of the alleged false representation(s), General Motor's liability for the complained of acts, whether Love properly repaired the vehicle).

On May 24, 2019, Defendants Love and Taylor removed Plaintiff's claim to federal court. ECF No. 1 at 1-5. On June 20, 2019, Plaintiff submitted an Amended Complaint identifying McCurley as a named Defendant and asserting the same above-identified claims along with an additional request that the Court "declare whether McCurley Cadillac is correct in that the engine is not under factory warranty" or, in the alternative, "to declare [McCurley] to have erred and to assess whatever damages have resulted . . . ." ECF No. 13 at ¶ 78. On June 10, 2019, Defendants Love and Taylor filed a Motion to Dismiss (ECF No. 8). On June 20, 2019, Plaintiff filed a Motion to Remand (ECF No. 14). On June 21, 2019, Defendants Love and Taylor filed a Motion to Continue Hearing on Plaintiff's Motion to Remand (ECF No. 17). On July 3, 2019, Defendants Ocala and Watts filed a Motion to Dismiss (ECF No. 25). These Motions are now before the Court.

**DISCUSSION**

**A.  Motion to Remand**

Plaintiff requests the Court remand this case back to state court.  ECF No. 14.  Plaintiff argues that remand is necessary because Plaintiff is seeking to join a non-diverse party, McCurley, as a defendant and the sole basis for federal subject matter jurisdiction is diversity.  ECF No. 14 at 1-3.

*1.  Applicable Law*

Generally, a defendant may remove a case to federal court if the federal court would have subject matter jurisdiction over one or more of the plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question) or 1332 (diversity of citizenship).  *See* 28 U.S.C. § 1441(a), (b).  However, where a case has been removed to federal court and the plaintiff subsequently "seeks to join additional defendants whose joinder would destroy subject matter jurisdiction[,]" the court "may deny joinder, or permit joinder and remand the action to the State court[.]" 28 U.S.C. § 1447(e).

After this case was removed to federal court, Plaintiff amended its complaint to name McCurley as a defendant.  ECF No. 13.  Instead of filing a motion for joinder, Plaintiff amended its complaint pursuant to Fed. R. Civ. P. 15 within 21 days of service of Defendants Love and Taylor's motion to dismiss.  ECF No. 14 at 1.  Because Plaintiff's complaint was amended as a matter of course, Plaintiff was

not required to seek leave of the Court to make this amendment. Fed. R. Civ. P. 15(a)(1)(B). The Ninth Circuit has not addressed whether the court may exercise its §1447(e) discretion to determine whether joinder is appropriate when a plaintiff uses Rule 15 to unilaterally amend a complaint to add a non-diverse defendant. District courts are divided on this issue. *See McGrath v. Home Depot USA, Inc.*, 298 F.R.D. 601, 606-07 (S.D. Cal. 2014) (gathering cases).

This Court agrees with other districts in this circuit that Rule 15 cannot be used to add a non-diverse defendant and evade the court's § 1447(e) joinder discretion. *See Hardin v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 1167, 1173-74 (E.D. Cal. 2011) ("Plaintiffs may not circumvent 28 U.S.C. § 1447(e) by relying on Fed. Rule Civ. Proc. 15(a) to join non-diverse parties."); *Clinico v. Roberts*, 41 F. Supp. 2d 1080, 1087-88 (C.D. Cal. 1999); *Winner's Circle of Las Vegas, Inc. v. AMI Franchising Inc.*, 916 F. Supp. 1024, 1026 (D. Nev. 1996); *Chan v. Bucephalus Alt. Energy Group, LLC*, No. C 08-04537-JW, 2009 WL 1108744, at *3 (N.D. Cal. Apr. 24, 2009) ("the permissive amendment under Rule 15(a) does not apply when a plaintiff amends her complaint after removal to add a diversity destroying defendant). Accordingly, the Court considers whether to permit Plaintiff's proposed joinder of McCurley.

## 2. Permissive Joinder

Rule 20(a) establishes two requirements for permissive joinder: "(1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence …; and (2) some question of law or fact common to all parties must arise in the action." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980). Additionally, the court should consider other factors in its permissive joinder analysis, such as:

> [T]he possible prejudice that may result to any of the parties in the litigation, the delay of the moving party in seeking an amendment to his pleadings, the motive that the moving party has in seeking such amendment, the closeness of the relationship between the new and old parties, the effect of an amendment on the court's jurisdiction, and the new party's notice of the pending action.

*Id.*

Plaintiff amended its complaint to include McCurley as a defendant because "McCurley has stated that defendant Love Chevrolet negligently installed an engine in [Plaintiff's] vehicle and therefore such does not fall under the factory warranty . . . ." ECF No. 14 at 2. The amended complaint seeks declaratory judgment as to "whether McCurley Cadillac is correct in that the engine is not under factory warranty" or, in the alternative, "to declare [McCurley] to have erred and to assess whatever damages have resulted . . . ." ECF No. 13 at ¶ 78. McCurley's representation to Plaintiff is an opinion on Plaintiff's dispute with

Love, but whether McCurley is correct in its interpretation of the vehicle's warranty status is a separate question from whether Ocala or Love misrepresented the vehicle's warranty status. Even if Plaintiff were to obtain declaratory judgment, Plaintiff offers no legal theory as to whether or how McCurley would be liable to Plaintiff for damages or any other form of relief. McCurley, at most, is being used as an expert to express an opinion. This does not make them a Defendant.

Other factors weigh against McCurley's joinder in this case. McCurley's involvement in the chain of events Plaintiff alleged was described in Plaintiff's original complaint and remains unaltered in the amended complaint. *Compare* ECF No. 1-1 at ¶¶ 42-45 *with* ECF No. 13 at ¶¶ 43-46. Plaintiff's motion for remand offers no explanation for why McCurley was not named in the original complaint, despite the allegations surrounding McCurley's conduct remaining the same. ECF No. 14 at 1-4. Plaintiff only added McCurley as a defendant after this case was removed to federal court on the basis of diversity jurisdiction. Furthermore, McCurley has no relationship to the Florida-based defendants in this case, whose interactions with Plaintiff gives rise to the operative events in this case. *See* ECF No. 28 at 4-5 (Plaintiff arguing for joinder of McCurley, but only alleging disputes with Ocala and Love).

For these reasons, the Court exercises its discretion to deny joinder of McCurley as a defendant in this case. 28 U.S.C. § 1447(e). Pursuant to Fed. R. Civ. P. 21, McCurley shall be **terminated** as a defendant in this case. Accordingly, because the parties remain diverse, Plaintiff's Motion to Remand (ECF No. 14) is **denied**. The Motion to Continue (ECF No. 17), being premised on the need for the Court to address the Motion to Dismiss before the Motion to Remand, is **denied as moot**.

## B. Motions to Dismiss

Defendants Love and Taylor and Defendants Ocala and Watts each move the Court to dismiss Plaintiff's claims against them for lack of personal jurisdiction.[3] ECF Nos. 8 at 1-2; 25 at 7.

### 1. *Personal Jurisdiction Standard*

Personal jurisdiction is the "power of a court to enter judgment against a person." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). When opposing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil

---

[3] Because the Court agrees it does not have personal jurisdiction over these defendants, the Court declines to address their other arguments regarding venue and res judicata. ECF Nos. 8 at 7; 25 at 7.

Procedure 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction is proper." *Mavrix,* 647 F.3d at 1223 (citation omitted).

Where "the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix*, 647 F.3d at 1223 (citation omitted). Under this standard, plaintiff's "materials [must] demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Data Disc, Inc. v. Systems Technology Associates, Inc*., 557 F.2d 1280, 1285 (9th Cir. 1977) (citing *United States Railway Equipment Co. v. Port Huron & Detroit Railroad Co*., 495 F.2d 1127, 1128 (7th Cir. 1974); *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971)). The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. *Mavrix,* 647 F.3d at 1223 (citation omitted).

Personal jurisdiction in federal courts is determined by the law of the state in which it sits. *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015). Washington state law permits personal jurisdiction over defendants to the full extent permitted by the Due Process Clause of the United States Constitution. *Shute v. Carnival Cruise Lines*, 113 Wash. 2d 763, 764 (1989). Under the Due Process Clause, a court may exercise personal jurisdiction over a defendant only where "the defendant has certain minimum contacts with the forum state such that

the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Picot v. Weston,* 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)) (internal quotation marks and brackets omitted).

There are two types of personal jurisdiction: general and specific personal jurisdiction. General personal jurisdiction requires connections with the forum "so continuous and systematic as to render the foreign corporation essentially at home in the forum." *Ranza,* 793 F.3d at 1069. Specific personal jurisdiction, in contrast, will lie "when a case arises out of or relates to the defendant's contacts with the forum." *Ranza,* 793 F.3d at 1068 (internal quotation marks and brackets omitted) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984)). The Ninth Circuit uses the following three-part test when determining if specific personal jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

1   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)

2   (citation omitted).  The plaintiff bears the burden of satisfying the first two prongs

3   of the test.  *Id.*  "If the plaintiff succeeds in satisfying both of the first two prongs,

4   the burden then shifts to the defendant to 'present a compelling case' that the

5   exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King Corp.*

6   *v. Rudzewicz,* 471 U.S. 462, 476-78 (1985)).

7           As the Supreme Court emphasized in *Hanson v. Denckla,* "it is essential in

8   each case that there be some act by which the defendant purposefully avails itself

9   of the privilege of conducting activities within the forum State, thus invoking the

10  benefits and protections of its laws."  357 U.S. 235, 253 (1958).  The rationale is

11  that a party who "purposely avails itself of the privilege of conducting activities

12  within the forum State" must also "submit to the burdens of litigation in that

13  forum.  *Hanson,* 357 U.S. at 253; *Burger King,* 471 U.S. at 476.  Where "the

14  defendant deliberately has engaged in significant activities within a State . . . or has

15  created continuing obligations between himself and residents of the forum . . . he

16  manifestly has availed himself of the privilege of conducting business there."

17  *Burger King*, 471 U.S. at 475-76 (internal quotation marks and citations omitted).

18          The jurisdictional inquiry is limited to examining contacts that "proximately

19  result from actions by the defendant *himself.*"  *Burger King*, 471 U.S. at 475.  This

20  is because:

ORDER DENYING MOTION TO REMAND; DENYING MOTION TO
CONTINUE; GRANTING MOTIONS TO DISMISS ~ 16

> Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff. In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.

*Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (quoting *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988)). In other words, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (citing *Int'l Shoe*, 326 U.S. at 319). Stated plainly, "[t]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. This limit on the Court's jurisdiction "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal citations and quotation marks omitted); *Picot*, 780 F.3d at 1212 (contacts that are merely "random, fortuitous, or attenuated" are not sufficient for establishing jurisdiction).

### 2. *Defendants Love and Taylor*

Defendants Love and Taylor request the Court dismiss Plaintiff's claims against them, arguing the Court does not have personal jurisdiction over them. ECF No. 8. The Court agrees. There is no general jurisdiction over Defendants

because their "home" is Florida, not Washington, and there are no allegations that suggest otherwise. There is also no limited jurisdiction because the complained of conduct has nothing to do with Washington and Defendants did not direct any of their activities toward Washington.

Plaintiff asserts that Defendants "made false representations regarding the status of the vehicle warranty" for a vehicle Defendants "knew belonged to a Washington company and that said vehicle was destined to be delivered to Washington." ECF No. 23 at 2. This is not enough to establish personal jurisdiction. "Mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows the *defendant* has formed a contact with the forum State." *Walden*, 571 U.S. at 290 (emphasis added); *see also Burger King*, 471 U.S. at 474-75 ("It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (quoting *Hanson,* 357 U.S. at 253). Here, Defendants performed work in Florida, at the request of Ocala in Florida, for a vehicle that happened to be owned by a Washington entity. ECF No. 13 at ¶ 30. Love and Taylor's only contact with Washington is through the present litigation. ECF No. 8 at 4; *see Walden*, 571 U.S. at 285 ("[t]he plaintiff cannot be the only link between the defendant and the

forum."). Love and Taylor's complained of conduct regarding the vehicle service and associated warranty representations is not connected to Washington "in a meaningful way." *Walden*, 571 U.S. at 290. Therefore, this Court has no personal jurisdiction over Defendants Love and Taylor.

### 3. Defendants Ocala and Watts

Defendants Ocala and Watts also request the Court dismiss Plaintiff's claims against them for lack of jurisdiction. ECF No. 25. There is similarly nothing to suggest the court has general jurisdiction over Ocala or Watts given they are at home in Florida and have no business in Washington. The Court also finds that it lacks limited jurisdiction of Ocala and Watts.

Ocala and Watts argue that they never purposefully availed themselves of the benefits and protections of doing business in Washington State, despite the national reach in advertising through third-party websites like cars.com. ECF No. 25 at 13. Plaintiff, on the other hand, asserts the Court has limited jurisdiction over Ocala and Watts because they "specifically made false representations regarding the status of the vehicle warranty . . . that defendants knew belonged to a Washington company and that said vehicle was destined to go to Washington." ECF No. 32 at 2. The Court agrees with Ocala and Watts.

First, as with Love and Taylor, mere awareness that conduct could affect someone in the forum state does not establish jurisdiction in said state. *See*

*Walden*, 571 U.S. at 289-90. "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Holland America Line v. Wartsila North America, Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)). Even if Ocala and Watts knew the vehicle belonged to a Washington company and was destined for Washington, this is not sufficient to establish personal jurisdiction over Ocala and Watts in Washington.

Second, Ocala and Watts' actions of advertising their cars for sale on internet websites which could be viewed in Washington does not establish personal jurisdiction in Washington. "[a] mere web presence is insufficient to establish personal jurisdiction." *Holland America*, 485 F.3d at 460 (citations omitted). A "passive website" which "simply provides information on the various products … and redirects potential customers" to the appropriate entity does not rise to the level of conduct "purposefully directed at the forum state." *Id.* Plaintiff alleges its president conducted an internet search to find the vehicle and separately contacted Ocala to initiate the purchase of the vehicle. ECF No. 13 at ¶¶ 13-14. Plaintiff does not allege that Ocala's web advertising involved anything more than the passive provision of information. Additionally, advertisements that are not

"designed specifically form the [forum] market" or are not "heavily or predominately distributed in [the forum]" do not establish personal jurisdiction. *Holland America*, 485 F.3d at 460. Here, Ocala's print and broadcast advertising are done in local Florida markets. ECF No. 25 at 3. Its internet advertising is targeted to consumers in central Florida. *Id.* Ocala has targeted no advertisements to consumers in Washington. *Id.* Ocala's "mere web presence" on third-party websites viewable in Washington is not sufficient to establish personal jurisdiction in Washington.

For these reasons, this Court does not have personal jurisdiction over Ocala or Watts.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff Multistar Industries' Motion to Remand (ECF No. 14) is **DENIED**. Pursuant to 28 U.S.C. § 1447(e) and Fed. R. Civ. P. 21, McCurley Integrity Cadillac shall be terminated as a defendant in this case.

2. Defendant Love Chevrolet and Darrin Taylor's Motion to Continue Hearing on Plaintiff's Motion to Remand (ECF No. 17) is **DENIED AS MOOT**.

3. Defendant Love Chevrolet and Darrin Taylor's Motion to Dismiss (ECF No. 8) is **GRANTED**.

4.  Defendant Gettel Ocala and Bobby Watts' Motion to Dismiss (ECF No.
25) is **GRANTED**.

The District Court Executive is directed to enter this Order, furnish copies to counsel, and **terminate from the docket Defendants** Gettel Ocala, Bobby Watts, Love Chevrolet Inc., Darrin Taylor, and McCurley Integrity Cadillac.

**DATED** August 26, 2019.



THOMAS O. RICE
Chief United States District Judge